Attorney Mr. Thomas, Attorney Mr. John C. McKinley, arguing on behalf of the defendant's Good morning, all. Mr. McCambridge. We will all have to put these off to the side so you can see us. That's if you want to see us. We're going to talk a little bit. Good morning, Your Honor, Your Honors. I'm John McCambridge. I'm appearing on behalf of the Robert R. McCormick Foundation and the Cantini Foundation. Can I just ask one question? Sure. Most of the arguments seem to name McCormick, but you're arguing that everything should be foundations, correct? Correct. Yes. Okay. Yes, everything applies plurally. All right. The foundations are major nonprofit charitable institutions in Chicago and Wheaton. The foundations were created by Colonel McCormick of Tribune Company. Prior to 2007, they owned about 13% of Tribune Company. In 2007, Sam Zell acquired Tribune through an LBO. The transaction closed in December of 2007. In September of 2008, the economy collapsed. Mr. Zell put Tribune into bankruptcy in December of 2008. Let me turn to the underlying litigation. Beginning in December of 2010, suits were filed in Delaware Bankruptcy Court and in various other jurisdictions. Plaintiffs there are represented by very sophisticated and aggressive New York lawyers. They represent a litigation trustee and representatives of their clients, the distressed debt hedge fund operators that acquired junior debt. The plaintiffs there ended up naming 5,000 individual defendants. The board, the special committee of the board, management, financial advisors, every shareholder who received $50,000 or more in the LBO, including the foundations. Are there any members of the foundations, either entity, that are part of that special committee? No. Were there ever any members who were part of the special committee? No. Okay. How about members of the Tribune board? One of the trustees of the foundations was also the CEO of Tribune Company and was on the board. So these cases were consolidated as an MDL in the Southern District of New York. Five years later, multiple motions to dismiss have been filed. One major claim, fraudulent conveyance actions against 3,000 shareholder defendants, including the foundations, has been dismissed and is now on appeal in the Second Circuit. The foundations have moved to dismiss the three other claims against them as well. Those are alleged claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty by others, and a second type of fraudulent conveyance under the bankruptcy statutes. All of the remaining motions to dismiss, the foundations and the dozens of others, have been fully briefed and are awaiting decision. No answers have been filed and discovery has been stated. Now, significantly, none of the defendants has been sued for violating any of the laws commonly understood to be securities laws. No 10B-5, no 33 Act, no 34 Act, no Blue Sky laws, nothing. And that applies not the board, the special committee, management, advisors, shareholders, including the foundation. Nobody's been sued for a securities law violation. What about fraudulent transactions because of insolvency at the time of the transaction? Fraudulent conveyance law is, well, one of them has been dismissed, as indicated, but we are seeking defense cause for that. In addition, the other fraudulent conveyance law is under the bankruptcy law. In each of those, the liability is based exclusively upon the receipt of money from an insolvent entity. That's the allegation. Would that fall under, would that be covered under either policy? Chartist or Chubb? Duty to defend. The duty to defend should be covered under the Chubb policy, yes. That claim as well. What's the difference between the Chartist policy, who in Chartist has denied everything, and Chubb, who's out there not knowing? What's the difference? The difference is that the Chartist policy is far broader. It is in, I'm sorry, the exclusion in the Chartist policy, and it states as the exclusion, it excludes any claim in any way relating to any purchase or sale of securities by the insured. So the Chartist policy is not limited by a claim for a securities law violation. It does not require a violation, and it is not tied to the exclusion that is in the Chubb policy. The Chubb exclusion says the actual or alleged violation of any securities law. You've got to have a violation, an alleged violation, and they have to be of the securities laws. So the trial judge held that there was no malpractice because the need for the insurance coverage fell entirely within the exclusion of the DNO policy, right? That's what he held. And so obviously you're going to tell us or try to convince us that that was an error. Correct. And how are you going to do that? What's the basis? Is there a count here that would not fall within an alleged securities violation? None of them fall within the securities law violation. None of them would? Correct. Well, then tell us why not. Begin with the language of the exclusion. The exclusion provides that the company should not be liable for loss on account of a claim involving the violation of securities laws. I've already noted no securities laws. Anything commonly understood to be securities laws are involved in the underlying litigation in any of the dozens of complaints and many hundreds of pages. Nobody is alleged to have violated any commonly understood securities law. So based on the exclusion itself, before you get to the definition, crystal clear, anybody reading that would understand you have to be sued for violating a securities law. And the understanding would be a commonly understood securities law. Now let's go to the definition, which is where most of the fight is. Definitions begin at page 842 of the appendix and run through page 846. And it's at page three of our reply brief. And the specific one here, securities law definition, is at appendix page 845. It is a single lengthy sentence unbroken by semicolons or any enumeration. Reading that sentence, it begins with, I'll just read it. Securities law means the Securities Act of 1933, Securities Exchange Act of 1934, Investment Company Act of 1940, any state blue sky securities law, or any other state, federal, state, or local securities law, or any amendments or any rules or regulations promulgated there under, or any other provision of statutory or common law used to impose liability in connection with the offer to sell or purchase or the sale or purchase of securities. So each of the specified laws that occupy most of this single sentence clearly have securities as their focus and as an essential element of any violation. In every instance, the law, and this is important, the law itself is focused on securities transactions. Anyone who looked at the law and wouldn't know it dealt specifically with securities. Well, let me ask you sort of a point of question. To defeat the summary judge in motion, I don't think you need to go that far. Because as I understand the law, if a single claim in the complaint under consideration is within or potentially within the policy zone of coverage, it triggers a duty to defend. Correct. Yes. Correct? Correct. You don't need to convince us of all of those allegations. What about, I'm most intrigued, what about this allegation of the fiduciary, breach of fiduciary duty, and when did that happen? Because that could potentially defeat summary judge. Sure. The, the allegation in the complaint, and again, let me emphasize this is the subject of a motion to dismiss. The claim the plaintiffs are making there against the foundations is, remember, the foundations combined own 13% of this company. The claim in the complaint on breach of fiduciary duty is that the ownership of 13% of the company converted the foundations into the controlling shareholder of the company, which is absolute nonsense under the law. We're expecting that to be dismissed when the court rules. Did they own more before, before this whole process began? No. Always 13%? Always 13%. I mean, once, I mean, I know at least as of, say, 05 or 06, there may have been a time in the past when they owned more, but only 13%. They were not even the largest shareholder. The family that sold the Times Mirror Company to Tribune Company in 2001, the Chandler family from Los Angeles, they owned 20% of the company. So the fiduciary duty claim says, okay, the foundations as a 13% shareholder, you're a controlling shareholder, and you owe fiduciary duties, therefore, to creditors of Tribune Company. So that's the claim. And then factually, the plaintiffs there argue, well, you know, you were engaged in looking at projections and various other things. But in terms of where the alleged fiduciary duty comes from, that's where it is. It's simply ownership of stock. And that in and of itself, does that inherently fall within the exclusion? I'm sorry, Your Honor. Does that, the fiduciary duty that you described, does that fall within the exclusion? No. Not even close. So how did the trial court metamorphosize that into a part of the securities transaction? I think what happened to the circuit court is that it basically treated this as if it were the Chartist exclusion. It simply said, well, quote, the facts alleged in the underlying complaint are in connection with the sale or purchase of securities. And that's not what the Chartist exclusion is. The notion, and, you know, there are cases, many cited by Gallagher, to the circuit court where it did deal with securities law violations. And in each instance, the defendant, the underlying defendant, was sued for violating the securities laws. And in this instance, we think that when you read the exclusion and compare it to the allegations of the complaint, that there's no question that the proper reading of that says securities law violations have not been alleged in every, we don't think in any instance, but it doesn't matter. The part of the sentence, well, the part of the sentence that's in dispute, or any other provisions of statutory or common law used to impose liability, you're saying that that has to be in some way a violation of securities law. Yes. But it has to, it relates, the entire, again, single sentence, the entire beginning, are all securities, clearly understood securities law violations. And at the end, it's a catch-all provision that says, or any other thing like those. What about, all right, let's then talk specifically about Deutsche Bank and NIS. Both of those clearly involve an inflated, possibly, sale of stock, or at least that's what's alleged. That's not a securities violation? That's correct. It's not a violation of the securities laws. That's the point. Might it be, well. If there were a different exclusion, i.e., the Chartist exclusion, that's not, that is not, that one does not require violation of securities law. This one does. And that's the fundamental difference, and the court here adopted the same reading, or a reading that was consistent with Chartist, and that's just not the case. So if it might be a violation of a bankruptcy provision, it's not a securities position, or it's not a securities law. Correct. If it's a violation of, you know, a common law fraud, not necessarily a securities violation. Right. The notion is that it's crystal clear here that this is a fiduciary liability policy, and we're being sued for violating fiduciary duties. Go ahead, please. I'm sorry. Well, you're both good timers. Touche. I've got to stop. I'm sorry. That's okay. It's an out. It's like elevating this. Yeah. It's to relax the court, I take it, right? That's why you're here. We're pretty relaxed anyway. I'm sorry. I apologize for that. No, it was a nice interlude. Broke my own train of thought. We're talking about, you know, these securities violations versus common law versus... Sure. So, you know, for example, the fiduciary duty laws, the bankruptcy laws, can arise, claims under those laws, arise in any number of contexts, factual contexts. And the mere fact that one of them involves the purchase or sale of securities doesn't convert fiduciary duty law into securities laws. That's the point here. It's their obligation to write something in an exclusion which is construed against the insurer in favor of coverage, particularly with an exclusion, to write something that the common person would read and understand the way that they're trying to do it now. And that's just not the case here. And we've got as... I'm sorry, Your Honor. That's okay. Go ahead. And as Your Honor says, we've got four claims, any one of which requires defense costs. And that's all we're talking about here. We have not been found liable for anything. We're trying to get our defense costs paid to beat the plaintiffs in this case. That's what this is about. And we're entitled to it. And the rules of construction in an insurance case require that the circuit court be reversed. What if we did reverse? What is going to happen? What would happen? If and when the court reverses, we will go back to the circuit court. What we will know as we go forward in the case, which is not over in that circumstance, would be that the exclusion that Gallagher has relied on to deny defense costs doesn't apply. And would you have to establish other things in order to... Would you have to present other evidence or would they have to present other evidence to determine whether, in fact, a duty to defend existed? I think, you know, we weren't very far developed, but I believe we were at a point in the case where there will be factual issues for sure. I mean, I think... In apropos there, the trial court, as I'm reading the ruling, held that the fiduciary duty claims you're referring to arose as a result of the foundation's conduct during the LBO. Well, it completely doesn't say when that was, so that has to be a factual matter, doesn't it? Yes, and I think one of the factual matters. One of the factual matters. I mean, one of the things I think Gallagher will say is that, you know, we didn't act negligently. I'm not going to come up with all the claims that they're going to make, but, you know, we will need someone in the court to conclude that this was a mistake by them, that they should have given us different advice, and things like that. So, no, we are not... If the court reverses, we are not done. Right. You're hanging in there, but you're not dusted. Right, we're hanging in there. We'll try that case, and, you know, obviously we've been waiting a long time in New York as well. All right, you'll have an opportunity for reply if you choose to. Thank you very much. Mr. Ford? Mr. Ford, do you have an Apple watch that's going to tell us what time? It's going to go off in 15 minutes. I'm going to rely on the bell, and I'll sit when I hear the bell. Well, you don't have to quit immediately. We'll let you finish your thought. Okay, thank you, Your Honor. I have to please the court, Mr. McCainbridge. There's no question that the allegations that give rise to the claim for insurance coverage involve conduct that arose in connection with a securities violation, not a securities act violation, in connection with a securities purchase or sale of securities. That's never been an issue in this case. The issue is whether the language that's been read by the court by Mr. McCainbridge covers these claims. And Mr. McCainbridge likes to read only the first part of the exclusion, and that is the exclusion that enumerates certain securities laws. Which part would you prefer? I prefer the part that here's what it says when you read our part. The claims that arise are a consequence of an alleged violation of any provision of statutory or common law. It doesn't say securities laws. It says any provision of statutory or common law used to impose liability in connection with the offer to sell or purchase or the sale or purchase of securities. Now, all of the conduct that's at issue in the underlying cases involves the conduct of these directors in effectuating the sale of their tribute stock. And that fits perfectly within the exclusion. There's no other reasonable interpretation. Now, Mr. McCainbridge says, but that has to be a securities act. It has to be one of the express provisions of the Securities Act. That ignores what I just read. That ignores that whole provision, that whole clause of the exclusion. But, well, taking that as your position, how then does the allegation say, I guess it would be count 14 of the Kirchner-Kitchener, I can't remember the name. Kirchner, yes, ma'am. That talks about transactions that they interfered with the special committee on issues about transactions. But if you go back into the complaint, the first parts of the complaint, that special committee was charged with maybe reorganizing assets, reorganizing management packages, looking at options to bring the company into some sort of solvency. What these directors are charged with are violations of our conduct that involve their attempts to manipulate and compel the sale of that stock. But there was only, what are the options? But these other issues aren't what they're charged with in the cases that we are called upon to defend by them. The charges that we are, that are brought in the cases that we are asked to defend and which we contend would have come within the exclusion, I'm speaking like in the shoes of Chauvier. Right. The breach of fiduciary duty and trying to get the directors to purchase a stock, aiding and abetting that breach, fraudulent transfer of the stock. This is all in connection with the purchase or sale of securities. Well, it seems much clearer, if it's going to be clear or not, in Mies and Deutsch that there is a sale. It's a sale alleged to have occurred when the company, or either left the company insolvent or while the company was insolvent. But in that Kirchner, they're talking about all sorts of options that that committee could have done. And the allegation is that the foundations tried to improperly influence that particular committee well in advance of any sale of stock. Those are not issues that have to be dealt with in the underlying litigation that they say does not come within this exclusion. And I guess why not again? I'm sorry. Because they're not alleged in the underlying complaints. But they're still part of the transactions that were to be determined. But the allegations in the complaint that the directors say Chubb or its insurers should have defended or would have defended are not those claims. The claims are all that all are in connection with the purchase or sale of securities. You have to accept that. It's not even raised, as you'll see from the briefs. Nobody's arguing otherwise. All of this is in connection with the purchase or sale of securities. Their argument is that the exclusion is more limited, that the exclusion, you have to have a specific reference to securities laws. And that's what Mr. McCambridge just told you, that the claim in the underlying litigation must refer to a specific securities law. Now, because it's a so-called securities exclusion. But as I just read you, it's much broader than just the violation of the securities laws. It covers any aspect of a transaction that involves securities. The underwriters know what they're doing. They don't want anything to do with securities. Well, they could have said what Jardis said in any way. As a matter of fact, Your Honor, they did a better job. I mean, they covered it in belt suspenders. Different ways if you compare the two of them. Keep in mind what he is saying and what the issue before the court is. He says it has to be as we, the exclusion only applies if there's a violation of a securities law. And as I just pointed out, it's much more to the exclusion than that. You know, as the case progressed, and that was their argument in the trial court that I just stated. As the case progresses, they realize that that's an unreasonable position because it ignores what I read. The whole third clause, we call it, of the exclusion. So page 17 of their brief, their opening brief, they move a little closer. And it was referred to in his argument by questions from the court. They say, or maybe some, what they call tag-along cases, maybe some common law cases. Maybe some common law fraud cases would also be included in that. So they're moving closer to our position. They realize that that doesn't do it either because it doesn't say, the clause doesn't say we're excluding common law fraud claims. It says, any provision, any provision, statutory or common law, used to impose liability in connection with the offer of sale. So you're saying there can never be an independent breach of fiduciary duty claim when the proceeding starts that's untethered to securities. You can never have that. Would you say that again, Your Honor? Well, the foundation, it alleged that the foundation has manipulated the board into putting the tribunal up for sale, private sale, and ensuring that the sale was ratified. That sounds like a straightforward breach of fiduciary duty allegation. And you're saying because it was commenced in connection with the stock, it doesn't matter what happens after that. It no necessity has to be securities. It is. They're breaching their fiduciary duty. It's like a scheme to defraud, and it's in connection with a purchase or sale of securities. Now, again, I have to say, they really haven't argued that this isn't in connection with a purchase or sale. They're saying that this exclusion only applies when the securities laws are mentioned. And I've given you one exception that they've conceded at page 17 of their brief, and again today, where they say, oh, no, maybe it covers common law claims, too, but not fiduciary duty. There also seems to be a discussion between the parties about controlling stockholder. Mr. McCambridge says that – Well, that might be an issue ultimately in the case, but it has nothing to do with whether it's covered or not, Your Honor. Whether they're controlling or not. They're accused of a violation of a transaction in connection with the sale of securities. Whether it's a valid allegation or not. But I want to point out one important point. As I said, they moved closer knowing that their first position was not reasonable, and they said, well, it covers common law claims. Then, if you get to page 1 of their reply brief, and I almost fell over when I read this. Page 1 of their reply brief, they say, the exclusion bars only claims for the violation of enumerated securities laws or another law used to impose liability in connection with the purchase or sale of securities. This is – as I said, I almost fell over when I read this. Realizing that their prior positions were unreasonable, they offer this. The exclusion bars claims enumerated securities laws or another law used to impose liability in connection with the purchase or sale of securities. Now, this is exactly what we've been arguing. This is exactly what the trial court held. And this is from their brief. Now, our case involves laws that impose liability in connection with the purchase or sale of securities. So you can affirm this case just based on that sentence from page 1 of their reply brief. I don't think in 22 years I've ever affirmed on a judicial admission, but that's essentially what you're asking us to do? Well, it's not – I don't know if it's a judicial admission or whatever. But what's happening is they're trying to defend their position on this exclusion, and they realize it doesn't work. So they keep going – first they say, well, it covers common law claims. Well, there's no basis to say it covers common law claims, but not these – it covers common law fraud claims. And then they say, well, they're trying – they're just dancing to try to find a way to make this exclusion work for them, to get outside of this exclusion. Because, again, it's conceded that it's – this conduct was in connection with the purchase or sale of securities. It's just a question of whether common law claims and statutory claims that are not based on the securities laws themselves come within the exclusion. As I said, their interpretation is not reasonable. There's a number of reasons why their interpretation is not reasonable. It ignores the whole critical third clause. If the parties wanted to limit it to enumerated securities acts, they would have done so. But they put in that third clause any law of any kind that deals with – that imposes liability in connection with the purchase or sale of securities. They put that language in, and that's – everybody concedes that this conduct was in connection with the purchase or sale of securities. They argue ambiguity, which, of course, is always in a contract case when you're dead on the language. You say, well, it's ambiguous. They never argued ambiguity in the trial court. The portions of their brief where they claim they did argue ambiguity, all they do is have the boilerplate language that's in every brief dealing with an insurance policy that, A, if there's an ambiguity, it's interpreted in favor of the insured. You have to say what words are ambiguous and why they're ambiguous and how they change the outcome. They never did that in the trial court, and they didn't do it here. All right, Mr. Ford, if we affirm your position, if we affirm this case, what happens to this case now? The case is over. Okay. There's nothing left in the trial court that has to be – Nothing. If we prevail, there's nothing left over. Is there any provision about prevailing party and fees? No. They also say the third – they rely on this doctrine of ad justum generis. You have to read that third clause that includes securities laws because it has no other independence. But those three clauses, number one, enumerated securities laws, the 33 Act, the 34 Act, that's clause one. Clause two is any other securities laws, even a local ordinance that deals with securities, would be excluded. And then the third clause is any conduct dealing with the purchase or sale of securities. So the bottom line is that you want us to look not to the framework of the allegations but to the substance. And if it's about the sale or purchase of securities, the exclusion applies. That's correct. That's what it says. Okay. The – once you accept the meaning of that clause, the application here is simple. Every claim asserted against the directors of the LBO litigation is based entirely on their conduct in the offer and selling of the shares of Tribune Stock. That's what the trial judge held. The securities transactions are the groundmen of the case. I mean, they're what the case is all about, the scenic way, whatever you want to call it. And there's only one reasonable interpretation of that clause. The judgment of the circuit courts, I respectfully submit, should be affirmed. Mr. Chairman? No. Thank you. Thank you, Mr. Ford. Mr. McCambridge. Mr. McCambridge, I know there's a number of things you want to say, but briefly, how do you respond to Mr. Ford's allegation that you made an admission or a concession in your brief that totally undermines the efficacy of your position? It's completely wrong. In fact, the interesting part, and I'm glad that's where I was going first, our position throughout, apparently you didn't read the actual briefs, was from the opening brief, page 17, the unenumerated securities law claims referenced at the end of the exclusion must refer only to claims that are similar or related to claims alleging violations, et cetera. We did not ignore the third clause. We interpreted the third clause, talked about the third clause, said when you get to the third clause, you have to read all of them. And here's the interesting thing. Four times Mr. Ford read what he said was the last clause. The last clause reads, actually, any other provision of statutory or common law used to impose liability, et cetera. Any other provision like the ones above. What did he say four times? He said what that last clause said. He claims is any provision of statutory common law. He omitted the word other. Other is the point. Here are the specific laws, and if there are other provisions like those, then they're covered. It is not. They claim in their brief that it is the last clause, which is just part of a long sentence. They, when they talk about it, they say it's completely freestanding. This is an independent element. It's not. It's one thing, and it's the way that you decide whether or not a securities law is an issue. When my buzzer went off, I was about to say, to emphasize that this is a fiduciary duty policy. That's one point. I did read the entire definition twice. The allegations that Judge Hutchinson mentioned are in the Kirchner complaint. The Kirchner complaint is the primary complaint that we are seeking our defense costs. Those are the people that are driving this bus, and they're the ones that specifically, when we talk about this in our briefs, talked about the breach of fiduciary duty as alleged interference with the considerations of the special committee as they dealt with what kind of a transaction should we do. Should we do no transactions? Therein is the problem. That word transaction sounds like a sale of stock, a securities transaction. It doesn't say that, but it sounds like that. Why isn't it that? Well, because, let me go back, it has to be a violation, and this is repetitive, of the securities law. Start with the fact that if there were an actual violation of securities laws, these guys would have pled it. So the idea, they complain in their brief a little bit about the fact that we use the labels of the claims that we're actually accused of. We do use the labels. And the reason that you see cases that don't pay attention to the labels is because they're concerned, well, maybe somebody's incompetent or maybe they're holding back their real claim or something. It's not this case. In addition, they had every opportunity, Gallagher, I mean, to say, oh, look, the allegations in the complaint, well, let's not talk about labels. The allegations in the complaint turn out to actually, if they had stated it, would state a claim for violation of the securities laws. They don't even argue that anywhere. In forming their answer, I mean, we're bound by the four corners of the complaint, the four corners of the insurance policy. In formulating their answer, would they be similarly, you know, restricted so that they would have to follow the labels or could they have gone to this would be a securities violation of XYZ? I assume that they could have made that argument and they did not. So the plaintiffs, I mean, believe me when I say we are dealing with some of the most aggressive lawyers in New York. And the notion that if they had a securities law violation that they wouldn't applaud it makes no sense. And part of the insurance construction is when you look at the underlying allegations of the complaint, the underlying complaint and the insurance policy, it's got to be construed in favor of the insured, not them. In fact, the judge below said, I see that there's a limited and a broad version. I'm picking the broad version. That's not the law in Illinois. Illinois, when you're dealing with exclusions, defense costs and insureds, it's crystal clear. You have to adopt the reading that gives coverage that's consistent with the Illinois law on all of these topics. Including, you know, and we talk in the briefs about the idea that when there are several specific items listed, i.e. the specific securities laws here, and other stuff like that, any other provision that does what those do, then it's got to be that. Justice McLaren isn't here. He always uses the Latin phrases. So I'll just reserve that issue. Every time I prepared for this, I said, how would I pronounce those words? I have no idea. What about ambiguity? Did you argue it in the trial court? We specifically made exactly the same argument. We said, we think ours is the only reasonable interpretation. But if theirs is reasonable, too, then it's ambiguous and you have to pick ours. So it doesn't matter. So, yes, we did raise that. Thank you very much. Gentlemen, thank you very much for your arguments. And, ma'am, thank you for the arguments and presence here today. We have learned a great deal and we will issue this decision in due course.